Good morning. I'm Doug Marshall. I represent Sherry Lee and Gabe Wagner. May it please the court, after five years of litigation, we're down to really one issue in this case, and that's whether or not Gabriel Wagner was an insured family member under his mother's Hartford Personal Automobile Policy. Excuse me. Whether he was a member of the household? Excuse me? Is the question that whether he was a member of the household? That is really the primary question. Early on in the case, there was some – I think that we alleged that he might have had some form of dual residency, which is allowed in some states, but I think the facts are that he did intend to move out of his mother's household. And what the intent was, what happened when he was seven – Montana statutes say there's only one residence, right? I think that there's a statute that says that. But as a factual matter, the split up, he moved out of his house at 17. His mother was – his mother and his new stepfather, who was the initial holder on this policy, were in a physical altercation, and then the stepson and the stepfather got into a fistfight, and after that time, Gabe Wagner moved out into a trailer at 17. He wasn't injured until he was 19. But the trailer that he was living in was, in fact, owned by the named insureds, Sherry Lee and Leo Fackler. Wasn't the title held in someone else's name? I think the title – Held in the seller's name. Yeah, title – it ultimately passed.  The trailer was paid for completely by – I understand what happened in terms of purchase price, but by some odd, I guess, arrangement, the legal title, which is really sort of all that matters, remained in the seller's name, right? Your Honor, I'm not sure. I thought that it – actually, I don't think that's correct. I think that our exhibits show that Sherry Lee and Leo Fackler actually paid the property taxes on that, and that wouldn't have been the case if it was still titled in the original owner's name. We have a property tax statement, and it's attached to, I believe, Sherry Lee's affidavit in the record. There's some jurisdictions that require that – to be a part of the same household that you live under the same roof. Montana, as yet, is not one of those jurisdictions. We say – Cases – let me ask you. The cases that say it doesn't have to be under the same roof, does that mean that it can be in some other city, some other jurisdiction, or some other place, or – There have been cases like that. And what were the circumstances of those? One Montana case that comes to mind is, I think, the Bottomling case where there was a summer residence. Another case, I believe it was – I don't remember the name. I think it was – If I remember, it was Cicerella v. American Mutual. I believe that was a Florida, New York situation. But our argument is – They were all situations where the primary members of the household lived in more than one location. Correct. And that's what I was going to say. I think that we've abandoned the dual residency argument. We're not saying any longer that Gabe Wagner was a resident of his mother's house and his stepfather's house at West Road and the trailer house that he shared with his family at the time of the accident. What we're saying now is that – and we've said it from the beginning – is that because of this ownership and the fact that the mother also let her other children stay in the place and paid taxes on this, that this should be fairly considered to be part of her household even though they are four miles apart. I mean, you've got one mother using the same structure, not just for Gabe, who was – there's evidence that he was attempting to buy it, but he never did finish paying on it. But before the accident – If parents buy homes for their children, they pay for the homes. Wealthy parents set their children up and buy the homes for them, though they would still remain members of the household even though they married, had their own children. I don't think that alone would be enough. I think there would have to be some other connection like the connection we have here where you've got some dual use. But there isn't always dual use. I mean, I'm thinking the normal circumstance where you have – I mean, in eastern Montana where you have a large ranch and there may be a couple of small ranches or trailers that the children live in, and some of them live there until they're – you can take the same facts and put them ahead 50 years, and they occasionally stay at the home place. I mean, what's different from – And I guess my answer to that, under the rules of construction under Montana insurance law, that that's probably considered part of the named insurance household. You know, I think the household – there's been a lot of discussion – I mean, this has been going on for over 30 years. I think the Kansas court, the Aetna case back in 1967, I mean, they're the first one that says that this language, resident in your household, it's fuzzy, it doesn't have any meaning, we don't know what this means. Cases have been going back and forth over this for, like I say, 30 years, and the insurance companies haven't bothered to change that. I think the term residence is now clear under Montana law. There's been a body of cases where – you know, there's also cases that say that the term resident is ambiguous or it's unclear, but I think in Montana, residence is clear. You can only have one residence, and there's statutes that have been applied by this court and Montana courts now that I think pretty well define residence. The same is not true of household. I mean, household can include not just the people you live with, but it can include, you know, kids that are off to college. It can – in some cases – And wouldn't you say it's a stretch of the word household to say that it includes married children who've left the house and have children of their own? I mean, if we're stretching for an actual aerial basis or any other basis, the definition of household to include your entire family in terms of your kids, your grandkids, no matter where they are, don't you think we're stretching the definition beyond what an objectively reasonable person would think? Your Honor, the – my response to that is that the granting language of this policy is that it defines family member. I mean, you actually have to turn the page and flip back to see the definition of family. You know, family member has a common meaning, and I think Mr. Sullivan can see it. Obviously, I mean, our guy's a son. Sure. He's related by blood, but family member is the defining language. Household, to define a family member as only someone that is a resident of your household, to me that's limiting language, which has to be construed constrictly against the insurer. I mean, the insurer is not surprised by – they can't be surprised by litigation on this issue. I don't know how often it comes up, but it's – you know, as you can see from the side of cases, I mean, it comes up all the time. It seems to me that if they want to define household in a manner that means there's under one roof or, you know, a nuclear family living together or however, they can do that. And there, in fact, have been policies that have done that. And I don't think that it would be too much of a burden for them to change that. This is an auto policy versus a homeowner's policy. It is. And bottom line involved a homeowner's policy. Do you see any difference? There is. And the difference, I think, is that under an automobile policy, you know, there's a public policy in Montana and many other states that favors insurance. If you're on the roads, there's a presumption that we're going to take care of people that get injured in motor vehicle accidents. And I think that there's an overriding presumption in Montana that makes the logic sometimes a little unfuzzy and unclear. I mean, I don't think that you can – you know, if a case finds coverage as it did and actually Blair and the Farmers versus Blair and the Bottomley case, they were both homeowner's cases. But in both of those cases, they found coverage. I think it's more true in the automobile context that the court is going to try to find coverage for people injured on the road, particularly in the context of underinsured and uninsured motorist coverage, which is this court, I think, is aware, or at least Justice Thomas is, that those are viewed as portable coverages. So it doesn't matter. You don't have to be covered for purposes of liability under a Montana automobile policy to get the benefits of either medical pay coverage or uninsured motorist or underinsured motorist coverage. And in this case, factually, Sherry Lee, you know, paid for – paid premiums on four different vehicles. Counsel, you're almost out of time. I want to just ask you one quick question about Blair. If the term was so unambiguous, why did it refer to the vote right? Is that the right vote right factors in order to reach its solution, if it was so clear and unambiguous? Oh, I don't – I'm arguing that it is – that the term household is ambiguous. Right. So you're arguing with – you say in your brief, and maybe I misread it, that Blair didn't reach the question of – Yeah. It didn't reach the question of whether or not household was ambiguous. And then it applied the vote right factors. And why was that necessary? Well, vote right really goes – it goes to residency, not to household. Okay. And the cases that have followed that – and I'll just – there's one new one, which I brought up. Sir, you're conceding he's not a resident of the household? I mean, he might be a household member, but he's not a resident. He's not – I'll concede that he's not a resident of the portion of the household that's at West Road. Let me – I just want to make sure I understand what you're saying. You're saying that if you applied the vote right factors, you probably would determine that the residence was elsewhere, right, in the trailer, not in the – not in his mother's house? Right. Unless – what I'm saying is that the household included – Sherry Lee's household included the trailer, not just the house. Not just the trailer, yeah. And I guess just lastly, I think that the Schwank case suggests that at a minimum, you know, we should have tried the question of what the household consists of. I mean, this case caught me a little bit by surprise. I wish I had prepared it more carefully. I couldn't imagine losing summary judgment when I briefed it. And, you know, five years later, I can now see very well how I might have handled it differently when I wrote the initial responses. Thank you. Thank you, counsel. Please record, counsel, your honors. For the record, my name is Pat Sullivan. I represent the defendant and appellee Hartford Underwriters Insurance Company in this case. The insurance provision that we're dealing with here is a very standard insurance provision found in, I believe, pretty much any and all insurance policies, including automobile liability policies that we have in our society today. The provision in question does require that the person claiming coverage must or the condition of coverage must be a resident of the insured household. And as Mr. Marshall had indicated, and I agree with him on this, there is a lot of case law on this particular issue. There's case law in Montana, and I submit that the case law in Montana, at least insofar as the standard that has been articulated by the Montana Supreme Court, is consistent or at least is within the mainstream of most of the other decisions nationwide. When you just look at this case factually, I submit that it's overwhelming in favor of the finding made by Judge Malloy that Gabriel Wagner was not a resident of the household. I'd just like to cite a few of the relevant facts here. He's an adult. He was living in a separate household. He was engaged to be married. He and his fiancée had a child. They all lived together in this other residence. He had moved out of the household that his mother had lived in at least 20 months prior to this automobile accident. He held a full-time job. He paid all of his expenses. He owned his own automobile, and he insured his own automobile. Now, a couple things addressed by Mr. Marshall. He had indicated, and I believe this is in response to a couple of the questions posed, insofar as the title to this mobile home. I believe the deposition testimony is clear in stating that, yes, there was a contract or some contractual relationship involved in the transfer of that mobile home eventually to Gabriel Wagner, but the title did remain in the seller's name, at least according to the deposition testimony of the plaintiffs in this case. I think another relevant question that was asked was with respect to the cases that do not necessarily require the claimant and the insured to be living under the same roof, and the question was, well, what, you know, are there different circumstances involved in those cases? And definitely there are different circumstances, and in the brief we have attempted to distinguish the cases which Mr. Marshall has cited in his brief, and I believe we were able to demonstrate that all of those cases are different. Essentially what it boils down to is when you have a situation where the claimant and the insured do not live under the same roof, what the courts have looked at is, well, was there a temporary departure from that household, such as a college student? Obviously we can understand that scenario where the college student is living outside the home in another town temporarily, and the cases essentially say that under those circumstances the student remains a member or resident of the household until such time as he or she graduates from college and obtains a full-time job. It's also the case addressed with the person who is serving in the military who considers his parent's home his or her home until such time as that person had ended his military state. And then also there's circumstances where somebody is gone from the household for whatever reason. It doesn't have to be college or military, of course, but there could be other reasons, and they have an intent to move back to the home, and they consider the parent's home or the named insured's home their permanent residence and are using that home for their mailing address, things of that nature. Excuse me, Counselor, on that point of intent, isn't there a conflict in the accounts of when and why the son moved out that would survive summary judgment? As far as the certain of his intent is one of the factors. Well, it's my understanding, based on the record evidence, that he was dating his fiancée since he was a freshman in high school and that he had been essentially kind of coming and going for a number of years. Actually, there's one named insured, Leo Fackler, and he married Sherry Lee, of course, the mother of Gabriel Wagner, I believe February of 1998, and the record evidence indicates that even before Leo Fackler had moved into the house, and he'd actually moved in before they were married, and that was in 1997, and he was coming and going during that period of time. I think there was evidence in the record indicating that there was a dispute between Gabriel Wagner and Leo Fackler. In other words, they didn't get along very well, but... The stepfather. Yes, and I believe that is demonstrated and established in the record. Is there any statement by Gabriel that he had an intent to return to the house? He had no intent to return. Did he have an intent? Is there a statement in his deposition or anywhere that he had an intent to return to his original, to his parents' home at any point? No, there's not, and actually, he addressed that in quite a bit of detail in his deposition testimony, and what he said is that he and his fiancée and their child were going to live in that mobile home, and that he was in the process, or at least he had plans to purchase some land elsewhere in the vicinity of that location, Eureka, and build a house or move the mobile home onto that property, but there's absolutely no intention for him to move back to the named insured residence, and I think it's pretty obvious when considering that he was engaged and they already had a child. So... Is there a dispute in the evidence as to the legal status of the trailer? I don't believe so. I don't believe there is, and I think it's pretty clear that there was a process involved where Leo Fackler, the stepfather, was purchasing or had purchased the home from the seller, at least in the process of doing it, and then Gabriel Wagner was acquiring the home from Leo Fackler. I gather this was all informal. Is that right? But there's no dispute as to the fact that at least either the stepfather or the stepmother had purchased the trailer for the use of the son. Right. I don't believe there's any dispute about that. And that he was making payments, was intended to make payments to repay them and acquire them in his own name. Yes. And as Judge Malloy indicated, it was a formal relationship because there was a contractual agreement, and as Judge Reinhart, Justice Reinhart indicated, I mean, you can have circumstances involving wealthy people or any other types of husband or, excuse me, relatives where you have a contractual relationship to purchase a home or to acquire a home. I don't think it's unusual for, for instance, an adult son to be on the same title as the parent, especially as the parent moves along in life. I think there's a lot of estate planning along those lines where that's done. You have right of survivorship, so when the parent dies, the title automatically goes to the child. But obviously that would have nothing to do with or would have no relevance to the question of whether the child, the adult child, was a resident of the parent's household. And, you know, I'd just like to touch on this ambiguity argument that Mr. Marshall had raised. I do acknowledge that there are some cases in other jurisdictions that are not controlling, which have held that a similar provision is ambiguous, but clearly the majority of cases have held the other way. And the cases in Montana have not indicated that the provision is ambiguous. But, of course, the test in Montana in determining whether a provision is ambiguous is if there's two reasonable, plausible, or two alternative interpretations which are plausible. And so in our brief we said, gee, the plaintiff here, the appellant, they have not come forward with any alternative interpretation that would be plausible. In the reply brief that was filed, what the appellant came back with was that, well, what this provision just says, it says that any family member is considered an insured, without getting into the details as to what constitutes a family member. Kennedy. Counsel, your time is up. If you want to just end in a sentence or two. Okay. I'm just going to say that if, with their interpretation, any family member would be covered under the policy, whether that person is living in the household or not. And I submit that that's not what the policy is intended to cover. Thank you. Kennedy. Thank you, counsel. Really quickly, I think the coming and going that Mr. Sullivan refers to suggests that this case should be tried, I mean, the record is not clear. The deposition testimony was not clear. There were contradictions by Leo Fackler. There are contradictions between the witnesses. I mean, those are matters of trial. Kennedy. What's your characterization of the evidence in the deposition as to the intent of the son to ever live in the household? The intent was to move out of the West Road residence. All right. So you're not contending that he ever intended to return to that residence. Your argument is only that the trailer is part of the household. Your Honor, he was he actually left items, including a bed at the other place. His, you know, I think the same thing happened in the Schlenk case. Okay. The 17-year-old doesn't necessarily know what his intent is. But I thought you were saying he did not intend to return to that house. His subjective intent was not to return, but I think that's the same thing, the same type of argument that was involved in Schlenk that this Court said, well, you know, he's a young kid. He's got contradictory testimony. We need a record where the judge can draw. But you're not saying there's contradictory testimony. I was just trying to understand. I think, am I right, your argument is that it depends on the fact that the trailer is part of the household, not that he intends to ever leave and return. Yeah. And that's, I guess, that's the argument, what I believe our best argument is. The question, I think, is a practical one. And maybe how I'd best explain this is that when he left the house, he did so for a couple reasons. One, there's not really enough room for him there. It's not a big house. He's got five other brothers and sisters living there. What difference does it make why he left if he moved out? Well, because he's a child when he moves out. And I think that makes him more likely to be able to be considered a part of his mother's household. Most of the facts are really undisputed, though, aren't they? It's just a matter of applying facts. I think they are. I mean, if you were to try this case, there's not much. I mean, I don't think anybody's disputing what the evidence is in the record, is there? The only thing that I think that we could try is what Sherry Lee's – factually, what did Sherry Lee's household consist of? And that's, I think, a mixed legal and factual question. Right. But are there any disputed facts as to that? I mean, it seems to me all the – I don't think there's a disagreement between the two of you as to what the essential facts are. It's just a question of how you apply the law to it, right? I think probably so. Ninety percent. You might have a few differences on that. I think that we'd have a better record if this were all tried in a focused issue in one trial. When we started out, I mean, we're litigating about six different issues. Now we're down to one. I'm not comfortable with the record that's been developed on that. I still have questions about what the household was. I think the affidavits, you know, they involve subjective intent. But we didn't even have the – Sherry Lee didn't even have the policy until after we filed the suit. So we can't fairly say that, well, I thought that, you know, my adult son, who lived in a separate trailer, was certainly covered under my policy, and she didn't even have the policy. So we can't fairly say those things in an affidavit. Thank you. Thank you. Thank you both. The case is argued will be submitted.
judges: D. Nelson, Reinhardt, Thomas